JANA B. LEONARD, OBA# 17844
SHANNON HAUPT, OBA # 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. Walker
Oklahoma City, Oklahoma 73139
(405) 239-3800       (telephone)
(405) 239-3801       (facsimile)
leonardjb@leonardlaw.net
haupts@leonardlaw.net
Attorneys for Plaintiff



IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| Katy Rodriguez, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Target Corporation,<br><br>Defendant. | No. CV-12-874-JAZ<br><br>COMPLAINT<br><br>REPRESENTATIVE ACTION<br><br>ATTORNEY LIEN CLAIMED<br>JURY TRIAL DEMANDED |

**COMES NOW** the Plaintiff, Katy Rodriguez, and on behalf of herself and other similarly situated individuals, submits this Complaint against the Defendant on the following allegations:

### I. PARTIES

1.01   The Plaintiff is Katy Rodriguez, an adult female residing in Pima County, Arizona.

1.02   The Defendant Target Corporation is registered to do business in Arizona and regularly conducts business within the geographical area encompassed by the United States District Court for the District of Arizona.

### II. INTRODUCTION

2.01   This is an individual and representative action Complaint brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (hereinafter "ADEA").

2.02   The Defendant persistently discriminated and retaliated against Plaintiff and

1

other members of the prospective class who are over the age of forty (40) and who suffered an adverse employment action during their employment with the Defendant. Such adverse employment actions targeted older workers protected from such age-based job actions by the ADEA (hereinafter the "prospective class").

2.03   Plaintiff and the prospective class complain of class-wide adverse employment actions as being in violation of the ADEA.

### III. JURISDICTION

3.01   Jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1367. Plaintiff brings this representative action for herself and on behalf of others similarly situated pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act.

### IV. PLAINTIFF

4.01   Katy Rodriguez was born in June 1952, making her over the age of forty (40) at all relevant times hereto. She began her employment with Target on or about 1985 and worked for Target for more than twenty-five (25) years when her employment ended on or about June 17, 2011. At the end of her employment, Rodriguez worked at Store No. T-1316 in Tucson, Arizona.

4.02   Rodriguez was hired as a part-time Team Member, then was promoted to a full-time supervisor within her first few years of being a Target employee. Her final position was as a Team Lead with supervisory responsibilities. Throughout her employment, she was qualified to perform her job.

4.03   During Rodriguez's employment with Target, she was regularly recognized as a satisfactory (or better) employee. Throughout the majority of her 25 years, she received positive performance evaluations as well as merit pay increases. However, despite her consistent positive performance, Rodriguez was ultimately forced out of her position at Target.

4.04   Particularly, during Rodriguez's last years at Target, her annual performance

ratings were dropped to "effective" ratings and she began receiving unwarranted discipline. Rodriguez was written up for the same things that other significantly younger employees were doing, though the younger employees did not receive disciplinary actions.

4.05    In or around mid-2011, Rodriguez spoke to ETL-Human Resources Sonny Lopez about her concerns regarding her employment. He stated that if Rodriguez felt work was effecting her health, or if she no longer enjoyed it, then she should retire. On several other occasions, Lopez teased Rodriguez by asking when she was going to retire.

4.06    Rodriguez's supervisor, Executive Team Lead ("ETL") Softlines Karen Palmour, also asked on multiple occasions when Rodriguez was going to retire. She made comments about how it might be time for Rodriguez to spend more time at home.

4.07    Rodriguez's employment ended when she was told by Lopez that if she was terminated, she would lose all of her retirement benefits. At that time, Target was writing employees up with the intention of forcing them out of the company because of their age. At that time, Rodriguez was fifty-eight (58) years old.

4.08    Rodriguez's Store Team Leader ("STL") was Karen Jordan.

4.09    Toward the end of Rodriguez's employment, she noticed that Target was moving in a new direction, hiring employees who were in their twenties, most of whom had just completed college. For example, a 23-year-old named John (last name unknown) was placed as Rodriguez's supervisor, despite him having no experience in a supervisory position.

4.10    Upon information and belief, Rodriguez worked within Region 200 at the end of her employment. However, the stores in Arizona fell within Region 300 for the majority of Rodriguez's tenure.

4.11    During most of Rodriguez's employment with Target, the Regional Senior Vice President ("RSVP") for her Region was Tina Schiel. Schiel was over Region 300 as the RSVP from February 2001 to November 2006. Schiel then moved to Region 200 as the RSVP in or around November 2006. Schiel was later promoted to her current position of

Executive Vice President, Stores at Target's Headquarters located in Minneapolis, MN in or around January 2011 where she oversees approximately 1,770 stores and more than 300,000 employees.

4.12   Rodriguez timely filed a charge of discrimination with the EEOC on or about December 14, 2011, alleging a pattern or practice of age discrimination and retaliation affecting Plaintiff and others as a class. More than sixty days have passed since such filing, making her Charge ripe for consideration.

## V. CLASS ALLEGATIONS

5.01   Plaintiff brings this action for age discrimination and retaliation alleging unlawful discharge on behalf of herself and members of the prospective class who worked for Defendant and were forty (40) years of age and older as of the last date of discriminatory actions taken against them. Upon information and belief, such unlawful conduct is continuing to occur.

5.02   Plaintiff and the other putative class members were together the victims of a single decision, policy, or plan of age discrimination and retaliation.

5.03   Plaintiff is a member of the prospective class she seeks to represent as the class members have also been subjected to willful age discrimination and/or retaliation by Defendant, as described in this Complaint.

5.04   Particularly, Plaintiff is not the only person to have alleged such actions of age discrimination. In fact, in the Western District of Oklahoma in *Lachney v. Target Corp.*, CIV-06-1389-HE, the Honorable Judge Joe Heaton conditionally certified a class of individuals who suffered age discrimination during their employment with Target, finding the plaintiffs "presented sufficient 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan' to justify the issuance of notice." Judge Heaton then denied Target's Motion for Decertification, finding that "sufficient evidence [existed] to create a justiciable issue on the pattern-or-practice issue"

of age discrimination at Target. More recently in the Western District of Louisiana in *Rodgers v. Target Corp.*, CIV-08-1300-DDD-JDK, the Honorable Judge Dee Drell conditionally certified a class of individuals who worked for Target for at least five (5) years who 40 or older when they suffered a constructive or actual discharge or forced resignation/retirement during the period from February 2, 2005 to November 29, 2005.

5.05   The conduct to which Plaintiff Rodriguez fell victim was not an isolated incident of age discrimination. Rather, she and the putative class members were together the victims of a single decision, policy, or plan of age discrimination. Such age discriminatory conduct was achieved through a pattern or practice of continuing acts throughout the company and has been ongoing for years. Particularly, by the early 2000s, Target implemented a nationwide policy to project a more youthful image. This policy included, *inter alia*, (1) marketing to a younger demographic; (2) intense recruiting efforts on college campuses; and (3) planning ways to manage out older employees who did not fit the new "Target Brand" in order to bring in "new, young, fresh blood."

5.06   The Defendant used policies and practices which discriminated against employees forty (40) years of age and over and/or who complained of age-based employment actions being taken. Said policies and practices include, among other actions: (1) subjecting Plaintiff and the employees within the prospective class(es) to wrongful terminations and constructive discharges because of their age and/or complaints of discrimination; (2) maintaining a policy or practice of issuing less favorable performance evaluations and disciplinary actions as a pretext for such adverse employment actions; and (3) replacing such employees with younger workers.

5.07   As background, Target consists of approximately 1,770 stores across the U.S. All positions (human resources, logistics, hard-lines, soft-lines, asset protection, guest services, pharmacy, building services, food operations, and distribution) report up the chain of command to the corporate office and ultimately to the CEO (currently Gregg Steinhafel).

1  And, Target's employees are subject to the same performance reviews (forms and standards)
2  and corporate policies, including, but not limited to the corrective action policy.

3      5.08   Target is broken down into four (4) Regions. Each Region contains Groups,
4  which consist of Districts. Each District consists of Stores. At the Store level, there is a
5  Store Team Leader ("STL"), Executive Team Leaders ("ETL"), Team Leaders, and Team
6  Members. The STL reports to a District Team Leader ("DTL"), who answers to a Group
7  Director ("GD"). The GD answers to the Senior Vice President for the Region ("RSVP").
8  The RSVPs report to the Executive Vice President of Stores who reports to the
9  President/CEO.

10      5.09   Significantly, Human Resources is partnered with in making all employment-
11  related decisions. It starts at the store-level with an ETL-HR. The ETL-HR dually reports
12  to the STL and the HR Business Partner ("HRBP") (overseeing multiple Districts). The
13  HRBP reports to the Group HR Manager ("HRM"). The HRM reports to the Regional HR
14  Director ("HRD"). The HRD reports to a Senior Vice President of Stores and Distribution
15  HR (currently Naomi Cramer), then to the Executive VP of HR (currently Jodeen Kozlak),
16  who reports to the President/CEO.

17      5.10   Around 2001, Target began marketing aggressively to a younger demographic
18  customer. And, Target began focusing its efforts on recruiting young college graduates so
19  that its staff would reflect the younger customer it hoped to attract. Target's website reflects
20  the only recruiting events Target has recently hosted have been on college campuses.

21      5.11   Indeed, as a guideline, **70% of Target's new executives come from college**
22  **campus recruiting efforts**. In fact, around 2001, one of Target's executives implemented
23  the 70/20/10 concept to fill executive openings: 70% college recruits, 20% external, and 10%
24  internal. To assist in meeting this goal, the recruiting team at Target tracks and presents data
25  during Group leadership meetings (attended by the GD, HRM, DTLs and HRBPs) reflecting
26  the productivity of various campuses, i.e., "Tier 1" schools, etc.

27
28

5.12  As a result, (upon information and belief) in one District in Region 100, of the 40 or so executive positions filled between 2008 and 2010, only 1 or 2 were filled by individuals over age 30, and none were filled by a person over the age of 40.

5.13  Upon information and belief, in September 2004, Target held a regional HR meeting in Texas. During this meeting, Develle Turner, Defendant's Manager of Diversity Recruiting, revealed that he had asked Target Executives to explain what type of employees fit the Target Brand. Target's top executives explained that Target Brand refers to a person who is "young, energetic."

5.14  Significantly, these comments were not limited to the recruiting context. Often, these "code words" were used to identify existing older workers in a less obvious way. Executives commonly use codes like Target Brand to disguise their age bias. In fact, many employees over age 40 were told they did not fit the Target "Brand" and were forced out of their jobs.

5.15  "Brand" was not the only ageist code word used by Target executives. "Blockers" was a code word used to describe older workers at Target who had no interest in moving from their position that were blocking the position for "new, young, fresh blood."

5.16  "Upgrade" was another code word utilized by Target executives. An "upgrade" is someone who is tagged as having alleged poor performance and is being managed out of the company.

5.17  With the marketing and recruiting in place, Target needed a process to eliminate or "upgrade" the older employees not meeting "brand" or "blocking" a position. As a means of creating this "Brand" and carrying out its pattern or practice of age discrimination, Target devised a scheme to purge older employees from its workforce and replace them with (as current Executive Vice President, Stores Tina Schiel stated) "new, young, fresh blood." Such process can be linked to the top of Target's hierarchy.

5.18  Ultimately, it was the responsibility of the RSVPs to ensure that the national

1  marketing issued by Target was implemented in the stores, and to make room for the new
2  college recruits. Therefore, national sales meetings were attended by positions from STL to
3  the CEO and HR personnel. In addition, Target executives held regular meetings, discussing
4  the future of all Target employees, i.e., succession planning, and targeting employees for the
5  process of elimination. Significantly, succession planning was addressed during the same
6  meetings (peak season meetings) where Target's 70% college recruitment guideline was
7  discussed.
8     5.19   These meetings have been called various names, but the future of Target's
9  employees is the focus. Succession planning was discussed quarterly during "talent day"
10 meetings at the Regional office. "Contribution meetings" were also held where executives
11 were required to present in writing their bottom two performers (those who "need[]
12 attention") and their one top performer. It was through these meetings that decisions were
13 made as to whom would be managed out of the company to make room for the new college
14 recruits.
15    5.20   Through these meetings, decisions are passed from RSVPs and HRDs down
16 to lower level executives. Regional, Group and District-level executives had heavy input as
17 to the fate of Target's employees. Often, lower level executives disagreed with the selection
18 of these good employees who were tagged to be managed out, but to no avail. In fact, those
19 that disagreed were often threatened with termination and retaliated against.
20    5.21   Plaintiff's claims are representative of the prospective class as a whole because
21 she was an employee of the Defendant who was forty (40) years of age and older and
22 qualified to do her job, as are the members of the class, and was included in the age-
23 motivated purge of employees carried out by the Defendant. Plaintiff's claims are, therefore,
24 typical of the claims of the prospective class(es). The relief sought by Plaintiff is also typical
25 of the relief which is sought on behalf of the prospective class(es). In short, the Defendant's
26 age-motivated actions were a scheme directed at Plaintiff and all members of the prospective
27
28                                          8

class(es) and amounts to class-wide age discrimination and/or retaliation.

5.22   Plaintiff and all prospective class members have been and are similarly adversely affected by the willful discriminatory and retaliatory practices complained of herein. Specifically, Plaintiff's claims, like those of the prospective class members, arise out of the Defendant's discriminatory and/or retaliatory terminations and constructive discharges, which were instituted and carried out on a class-wide basis. As such, those members of the prospective class(es) who did not file EEOC Charges of Discrimination, if any, are allowed to "piggyback" on the Charge of Discrimination filed by Plaintiff and others who timely filed such a charge.

5.23   The Defendant acted, refused to act, and continues to act on grounds generally applicable to the class by adopting and following policies, practices, and procedures which discriminate on the basis of age. The Defendant acted in a manner generally applicable to the class by constructively discharging or terminating the Plaintiff and/or members of all prospective class(es) and replacing them with younger workers.

5.24   To the extent the Court declines to certify the Complaint as a single class, Plaintiff seeks certification of appropriate sub-classes to be determined by the Court.

5.25   The relief necessary to remedy Plaintiff's claims is the same as that necessary to remedy the claims of the class(es). Plaintiff seeks, *inter alia,* the following legal and equitable relief for her individual claims and those of the class:

    a)   a declaratory judgment that the Defendant engaged in willful age discrimination and/or retaliation;

    b)   back pay, front pay, and other incidental monetary rights and remedies necessary to make the Plaintiff and the class members whole from the Defendant's discrimination and/or retaliation;

    c)   liquidated damages;

    d)   costs of litigation and reasonable attorneys' fees; and

e)   all other relief available by law.

## VI. COUNT I - AGE DISCRIMINATION IN EMPLOYMENT ACT

6.01   The foregoing paragraphs I through V, and their respective subparagraphs, are incorporated by reference as though set out in full.

6.02   Defendant engaged in an industry affecting commerce and has twenty (20) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. As such, Defendant is an "employer" as that term is defined under 29 U.S.C. § 630.

6.03   Defendant's pattern or practice of age discrimination targeted employees over the age of forty (40) in an effort to purge such individuals from its workforce. These employees were wrongfully evaluated, disciplined, terminated and/or constructively discharged because of their age and/or complaints of age-based employment actions.

6.04   Although Plaintiff and members of the prospective class(es) were and are all qualified for their positions, the Defendant began to take adverse employment actions against such individuals based on pretextual reasons.

6.06   The Defendant's adverse employment actions taken against Plaintiff and each member of the prospective class were part and parcel of a scheme to eliminate older workers from the Defendant's workforce and/or workers who complained of age-based employment actions being taken. The discrimination and retaliation against older employees, such as Plaintiff, constitutes a pervasive and continuing pattern of discrimination and retaliation in employment that existed within the Defendant's workforce.

6.07   The described conduct of the Defendant constitutes a willful violation of the ADEA.

6.08   As a direct and proximate result of the Defendant's conduct, Plaintiff and the prospective members of the class were denied equal employment opportunities based upon their age. They are entitled to their full make-whole relief, including, without limitation,

back pay, reinstatement or front pay, prejudgment interest, and liquidated damages.

6.09   Plaintiff and the prospective class members are entitled to an award of reasonable attorneys' fees, out of pocket expenses, and costs incurred in bringing and maintaining this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff for herself and others, prays this Honorable Court:

(1)   Take jurisdiction of this matter;

(2)   Enter a declaratory judgment that the Defendant engaged in willful age discrimination and/or retaliation;

(3)   Pursuant to the authority of the ADEA, permanently enjoin the Defendant, its officers, agents and representatives from future discriminatory and/or retaliatory acts relative to Plaintiff and the members of the class;

(4)   Award Plaintiff and the class members back pay, front pay and other incidental monetary rights and remedies from the last date of discriminatory and/or retaliatory action to the date of trial;

(5)   Award Plaintiff and the class members liquidated damages against the Defendant;

(6)   Award pre-judgment interest;

(7)   Award Plaintiff's and the class members' costs and expenses in this action, including reasonable attorneys' fees as authorized by law; and

(8)   Such other and further relief as the court deems just and proper.

Respectfully submitted,

*[signature]*

JANA B. LEONARD *
Oklahoma Bar No. 17844
SHANNON HAUPT *
Oklahoma Bar No. 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. Walker
Oklahoma City, Oklahoma  73139
(405) 239-3800      (telephone)
(405) 239-3801      (facsimile)
* *pro hac motion filed and pending*

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**