**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katy Rodriguez, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Target Corporation,<br><br>Defendant. | No. CV-12-874-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment filed by Defendant Target Corporation ("Target") on September 20, 2013. (Doc. 78.) Plaintiff Katy Rodriguez ("Rodriguez") filed a response to the Motion on October 21, 2013. (Doc. 88.) Target filed a reply on November 8, 2013. (Doc. 113.) On November 14, 2013, the Court permitted Target to file a controverting statement of facts ("DCSOF") in response to Rodriguez's separate statement of facts "(PSSOF). (Docs. 116, 117.) Target seeks summary judgment on Rodriguez's claims of age discrimination and retaliation. For the reasons stated herein, the Court will grant the Motion.[1]

**STANDARD OF REVIEW**

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

---

[1] This case is suitable for decision without oral argument. *See* L.R. Civ. 7.2(f).

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim. *Id.; see also* Fed. R. Civ. P. 56(c).

If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Anderson*, 477 U.S. at 256; *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). The nonmoving party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

**PROCEDURAL HISTORY / ISSUES BEFORE THE COURT**

Given the voluminous filings submitted by Rodriguez in this matter, the Court must clarify the pending issues before summarizing the relevant undisputed and disputed facts of this case. On November 27, 2012, Rodriguez filed a Complaint in this Court alleging claims against Target for age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), on behalf of herself and members of a prospective class. (Doc. 1.) According to the Complaint, Rodriguez began her employment with Target in 1985 and worked for Target for over twenty-five years until she was constructively discharged in 2011. Rodriguez alleges that she was constructively discharged through unwarranted discipline and negative

performance evaluations, as well as suggestions that she should retire and threats that termination would cause her to lose her retirement benefits.  Rodriguez further alleges that her treatment was part of a pattern or practice of age discrimination by Target as it attempted to rebrand itself with a more youthful image and force out older employees.

On September 20, 2013, the Court issued an Order resolving several early motions filed in this case. (Doc. 77.)  The Court granted Target leave to file an early motion for summary judgment directed at Rodriguez's individual discrimination and retaliation claims under the ADEA.  Specifically, the Court held that, prior to addressing Rodriguez's Motion for Conditional Class Certification, it would consider Target's motion for summary judgment on two narrow bases: (1) Rodriguez cannot prove that she suffered an adverse employment action, and (2) Rodriguez cannot prove that she engaged in protected activity. (Doc. 77, pg. 7.)  In so holding, the Court rejected Rodriguez's claim that the merits of her individual claims should not be considered until after the Court ruled on her pending Motion to Conditionally Certify the Class.  The Court noted that Rodriguez had not identified – and this Court had not discovered – a single case in which a plaintiff who may not have suffered an adverse employment action may avoid early dismissal of a meritless claim by invoking a collective action claim.

Following the Court's September 20, 2013 Order, Target filed the pending Motion for Summary Judgment, presenting the two issues contemplated by the Court's Order. First, Target contends that Rodriguez's age discrimination and retaliation claims fail as a matter of law because she did not suffer an adverse employment action.  Second, Target argues that Rodriguez's retaliation claim fails as a matter of law because she did not engage in a protected activity.  Target's Motion relies almost exclusively on Rodriguez's deposition testimony regarding her employment and alleged constructive discharge.  The Motion is supported by a 7-page, 48-paragraph statement of facts ("DSOF") and 3 exhibits, eighty pages in length.  (Doc. 79.)

In response to Target's Motion for Summary Judgment, Rodriguez filed an opposition that opens with an exhaustive review of what Rodriguez refers to as a "historic backdrop of the pattern or practice of age discrimination at Target."  Rodriguez's

response to the Motion is accompanied by a 14-page response to Target's statement of facts ("PSOF"). (Doc. 90.)  The PSOF does not comply with LRCiv 56.1, which provides that "a party opposing a motion for summary judgment shall file a statement that sets forth, for each paragraph of the moving party's statement, a separately numbered paragraph indicating whether the party disputes that statement and a reference to the specific, admissible portion of the record supporting that party's position." LRCiv 56.1. Instead, the PSOF repeatedly includes a single paragraph which is meant to respond to several combined paragraphs of the DSOF. (*See, e.g.,* Doc. 90, pgs. 8-9, responding to DSOF 22-29.)  Rodriguez also filed a 14-page, 43-paragraph separate statement of facts ("PSSOF") that includes over 1,000 pages of un-tabbed exhibits.[2]  (Doc. 89.) These exhibits include other complaints filed against Target, orders from other courts regarding other age discrimination class action suits against Target, dozens of depositions and affidavits from other Target employees at numerous other Target stores, EEOC charges filed against Target by other employees, and internal Target HR planning documents with no apparent bearing on Rodriguez's employment.  Rodriguez's filings include repeated references to alleged discrimination against other Target employees at other Target stores nationwide.  In short, Rodriguez's response to Target's Motion for Summary Judgment appears to be accompanied by any and all evidence in the possession of Rodriguez's counsel that could conceivably support any sort of discrimination claim by any employee against any Target store in the United States, ever.

Rodriguez's response suggests that this outpouring of irrelevant documentation is justified because "constructive discharge and retaliation claims must be considered in light of the totality of the circumstances." (Doc. 88, pg. 1.)  In support of this claim, Rodriguez cites to: (1) an unpublished Ninth Circuit case construing Montana state employment law, *Johannsen v. Nike, Inc.*, 336 Fed. Appx. 600, 601 (9th Cir. 2009); (2) a Section 1981 retaliation case from the United States District Court, District of Nevada, in

---

[2] The PSSOF does not comply with the Court's May 28, 2013 Scheduling Order, which advised the parties that pleadings appended with more than one exhibit shall be divided by tabbed dividers. (Doc. 30.)

- 4 -

which the adverse action element is undisputed, *Reece v. Republic Services, Inc.*, 2011 WL 868386 (D. Nev. 2011); and (3) a constructive discharge case from the United States District Court, District of Kansas, which in no way discusses allegations of other discriminatory acts by the employer against other employees. *Harris v. First Nat. Bank of Hutchinson, Kan.*, 680 F. Supp. 1489 (D. Kan. 1987). None of these cases are relevant to the issues facing this Court. As more fully explained in the analysis below, this case cannot proceed if Rodriguez cannot demonstrate that she suffered an adverse employment action, *ie*. that *she* was constructively discharged from her employment at Target.

A plaintiff alleging a constructive discharge may prove that her working conditions were made intolerable due to a "continuous pattern of discriminatory treatment." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990). The relevant factual inquiry, however, is whether the employee *individually* suffered a continuing pattern of discrimination – not whether the employer's standard practice was to discriminate.[3] *See Poland v. Chertoff*, 494 F.3d 1174, 1184-85 and n.7 (9th Cir. 2007) (employee asserting constructive discharge must prove that a reasonable person in the employee's position would have viewed the working conditions as intolerable; the employee is not required to prove the employer's subjective intent to discriminate). This is particularly true in this case, where Rodriguez admits that she did not have personal knowledge of any allegations of age discrimination that occurred outside of Store #1316.

---

[3] In some instances, courts consider circumstantial evidence that an employer endorsed a culture of discrimination, but not in the context of the "adverse employment action" prong of a plaintiff's prima facie case. Evidence of a pattern or practice of discrimination may be relevant to whether an employer replaced the plaintiff with a younger employee, *see, e.g. Wunderly v. S.C. Johnson & Son, Inc.*, 828 F.Supp. 801, 805 (D. Or. 1993) (circumstantial / statistical evidence of employer downsizing relevant to "replaced by younger employee" prong of prima facie case), or whether an employer's stated reasons for termination are pretextual. *See, e.g. Ryder v. Westinghouse Elec. Corp.,* 128 F.3d 128, 132 (3d Cir. 1997) (evidence of allegedly ageist comments made by senior management relevant to pretext). Neither of these elements is at issue in this case.

(Doc. 113-1, pg. 15.)[4]   Rodriguez also testified that she did not know whether other employees within her store received corrective action for errors similar to those for which Rodriguez was disciplined. (DSOF 19-21; PSOF 19-21.)[5]   Given that Rodriguez did not know about the allegations of discrimination by others, those allegations are not relevant to this Court's consideration of whether a reasonable person *in Rodriguez's position* would have felt compelled to retire.

Thus, the Court is not convinced that Rodriguez's individual claims must be viewed against the "historic backdrop" of the alleged pattern or practice of age discrimination at Target. Instead, the Court regards Rodriguez's response as an attempt to re-litigate and/or ignore the Court's previous Order holding that a plaintiff who has not suffered an adverse employment action may not avoid early dismissal of a meritless individual claim by invoking a collective action claim.[6]  Accordingly, in evaluating Target's Motion for Summary Judgment, the Court considers only the undisputed and disputed facts pertaining to *Rodriguez's* employment at and alleged constructive discharge from Target. The Court has not considered allegations of fact related to the experiences of other Target employees or other claims against Target.

## FACTUAL / PROCEDURAL BACKGROUND

Rodriguez began her employment with Target in 1985 as an hourly, part-time Team Member at Store #179 in Tucson, Arizona. (DSOF 1; PSOF 1.) She moved to a

---

[4] Because Rodriguez's failure to comply with the Court's Order and the local rules makes it difficult to discern which of Target's statement of facts she is disputing, the Court has at times cited directly to the record rather than the parties' statement of facts.

[5] Plaintiff disputes this fact, stating that Rodriguez believed younger employees failed to complete the same tasks about which Rodriguez was coached, but they were not disciplined. However, none of the citations to the record provided by Rodriguez actually support this assertion.

[6] This interpretation is bolstered by Rodriguez's citation to *Theissen v. General Electric Capital Corp.*, 267 F.3d 1095, 1108-09 (10th Cir. 2001). (Doc. 88, pg. 9.) This Court rejected the applicability of *Thiessen* in its September 20, 2013 Order. (Doc. 77, n. 3.) The Court also notes that Rodriguez's counsel has been admonished by at least one other court for playing fast and loose with the record at summary judgment. *See Roberts v. Target Corp.*, 2013 WL 5256867, *14 n.14 (W.D. Okla. Sept. 17, 2013.)

full-time position and was promoted to a temporary supervisor position within a few years. (PSSOF 6; DCSOF 6.) In 1991, Rodriguez was promoted to a Team Leader position. (DSOF 2; PSOF 2.) As a Team Leader, Rodriguez reported to an Executive Team Leader ("ETL"), who, in turn, reported to the Store Team Leader ("STL"). (DSOF 3; PSOF 3.) As a Team Leader, Rodriguez acted as a supervisor for Team Members. (DSOF 4; PSOF 4.) In 2001, Rodriguez transferred from Store #179 to Store #1316, but continued working as a Team Leader.

Target conducts annual reviews of employee performance in which the employee is assigned a score between 0-100. (Doc. 92, Ex. 20.)[7] From 2005 to 2010, scores ranging from 80-89 were considered "excellent;" scores ranging from 70-79 were considered "effective;" and scores ranging from 60-69 were considered "inconsistently effective." (*Id*.) Prior to 2005, scores were ranked as "outstanding," (70-100); "high satisfactory plus" (65-69); "low satisfactory plus" (60-64); "satisfactory" (50-59); and "unsatisfactory" (0-49.) (*Id*.) An employee's review score impacts how much of a pay increase the employee can receive. (DSOF 7; PSOF 6.) Between 1986 and 2010, Rodriguez's scores ranged from 61 to 92 as follows:

| 2009 – 80 | 2000 – 91 | 1992 – 70 |
| 2008 – 72 | 1999 – 84 | 1991 – 69 |
| 2006 – 78 | 1998 – 88 | 1989 – 61 |
| 2005 – 82 | 1996 – 88 | 1988 – 67 |
| 2002 – 80 | 1995 – 92 | 1987 – 61 |
| 2001 – 90 | 1994 – 83 | 1986 – 66. |

(*Id*.; Doc. 92, Ex. 83, pg. 3.)

On April 9, 2011, during her 2010 annual review, Rodriguez received a score of

---

[7] Oftentimes the Court cites to the lodged version of Rodriguez's exhibits because it was docketed by exhibit with descriptions of each exhibit. (*See* Doc. 92.) The filed version does not identify the exhibits by corresponding electronic exhibit number. The courtesy hard copy of the exhibits provided to chambers is not tabbed and locating specific pages is laborious given the number of pages and quantity of irrelevant information submitted.

70.[8] (Doc. 92, Ex. 37, pg. 3.) Rodriguez stated in her deposition that a score of 70 is a "positive" score and equivalent to a ranking of "effective." (Doc. 79-1, pg. 8.) Rodriguez received a raise based on her 2010 performance. (Doc. 79-1, pg. 65.)

Target follows a progressive employee discipline policy. At the first step, an employee is "coached"; at the second step, the employee is "counseled"; at the third step the employee receives a "final written warning"; and the final corrective action is termination. (DSOF 9; PSOF 9.) Formal corrective actions are typically reviewed by the ETL-Human Resources ("HR") or the STL before they are issued to team members. (PSSOF 11; DCSOF 11.) Before 2011, Rodriguez received corrective action on four separate occasions.[9] (DSOF 11; PSOF 11.) In May 2005, Rodriguez was coached for calling a Team Member in to work without supervisor permission. (Doc. 79-1, pg. 55.) In January 2008, Rodriguez was coached for having a delinquent Target credit card. (Doc. 79-1, pg. 58; PSOF 11.) In January 2009, Rodriguez was counseled for being tardy on multiple occasions and calling in absent for scheduled shifts. (Doc. 79-1, pgs. 60-62.) In April 2009, Rodriguez received a final written warning regarding her attendance. (Doc. 79-1, pgs. 62-63.) Rodriguez did not challenge or dispute these corrective actions with Human Resources. (DSOF 13; PSOF 13.)

Target's Human Resources Business Partner Sherri Brenner testified that she spoke with Rodriguez in February, 2010. (Doc. 92. Ex. 34, pg. 2.) Although Rodriguez claims that Brenner spoke with her as part of Brenner's review of a discrimination complaint made by another Target employee, Robert Lovio, Brenner testified that her conversation with Rodriguez was separate from the Lovio investigation. (Doc. 92, Ex. 34, pg. 5.) According to Ms. Brenner's notes, Rodriguez told her that people were not happy regarding how they were being treated, that Rodriguez had gone to the doctor because things were overwhelming in the store, that the store did not have enough payroll and that

---

[8] It appears from the record that an employee's annual review is typically conducted in April of the year following the year being reviewed. (Doc. 92, Exs. 20, 37.)

[9] Rodriguez disputes whether these corrective actions were justified, but she does not dispute that the corrective actions were issued. (Doc. 90, pgs. 3-4.)

- 8 -

not enough weekend help was available during the holiday.  (Doc. 89, Ex. 44.)

From July 2010 until April 2011, Rodriguez's supervisor was ETL Karen Palmour.  (DSOF 15; PSOF 15; Doc. 92, Ex. 35, pg. 2.)  Both Ms. Palmour and Rodriguez were in their 50s in 2011.  (DSOF 16; PSOF 16.)  On January 28, 2011, Ms. Palmour identified Rodriguez as an employee "needing attention" at a contribution meeting.  (Doc. 92, Ex. 35, pg. 7.)  There is no evidence in the record that Rodriguez was aware of this designation.  Rodriguez testified regarding the contribution meetings she had attended as a supervisor and stated that being identified as "needing attention" does not necessarily mean that the employee needs corrective action.  (Doc. 117, Ex. A, pg. 25.)  In early 2011, Ms. Palmour issued eight documented coachings to Rodriguez over a two-month period, six of which related to Rodriguez's failure to complete her work on time.  (Doc. 92, Ex. 35, pgs, 11-12; Doc. 92, Exs. 39-41, 45-47, 54-55.)  Rodriguez admits that she did not always complete her work on time and that her performance fell short of her supervisor's expectations.  (DSOF 18; PSOF 18; Doc. 79-1, pgs. 43, 45, 68.)

Rodriguez believed she was being "picked on" and that not all Target employees were being held accountable for the same errors.  (*Id*., pgs. 16-17.)  Rodriguez spoke to Sonny Lopez, ETL-Human Resources, and stated that she was afraid of losing her job.  (DSOF 22; PSOF 22.)  Rodriguez told Mr. Lopez that she knew Target was bringing in "younger people out of college," that she knew her lack of a college degree would prevent her from receiving a promotion, and that she had worked for Target for a long time.  (Doc. 79-1, pgs. 17-19.)  Rodriguez believed that these comments to Mr. Lopez amounted to a complaint of age discrimination.  (Doc. 79-1, pg. 17.)

On one occasion, when Rodriguez and Ms. Palmour were closing the store, Rodriguez commented that she sometimes felt like she should retire.  (Doc. 92, Ex. 52, pg. 8.)  Ms. Palmour responded with comments to the effect of "yea, you would probably be okay, you would have your 401k, you could spend more time at home."  (*Id*.) Occasionally, Mr. Lopez would tease Rodriguez by asking her when she was going to retire; Rodriguez described his comments as "just kiddingly, passing … we would laugh

- 9 -

about it." (Doc. 92. Ex. 35, pg. 11.)  Rodriguez does not recall whether he made the comments before or after Rodriguez announced her plan to retire.

On April 15, 2011, Ms. Palmour met with Rodriguez and explained that Rodriguez had not completed an assigned task on time and was going to receive a corrective action. (DSOF 26; PSOF 26.)   Rodriguez believed that the corrective action would be counseling.[10]  (DSOF 27; PSOF 27.)  Upon learning that she would receive counseling, Rodriguez became upset, told Ms. Palmour "I can never do anything right for you," and walked out.   (DSOF 28; PSOF 28.)   After meeting with Ms. Palmour, but before corrective action was issued, Rodriguez met with Mr. Lopez and stated that she wanted to retire.  (DSOF 29; PSOF 29.)  Rodriguez knew prior to notifying Mr. Lopez of her retirement that Ms. Palmour had accepted a position at another Target and would be leaving Store #1316.  (DSOF 30; PSOF 30.)  Rodriguez later testified that she decided to retire because she felt that she was going to receive additional corrective actions, be pushed out of her job and lose her benefits.  (DSOF 31; PSOF 31.)

Rodriguez commented to Mr. Lopez that she believed that if she was terminated, she would lose her benefits; according to Rodriguez, Mr. Lopez did not respond.  (DSOF 32; PSOF 32.)  Rodriguez admits that she did not know whether her benefits would be discontinued if she was terminated and she did not do anything to verify her belief that she would lose her benefits.  (DSOF 33; PSOF 33; Doc. 79-1, pg. 29.)  Rodriguez later discovered that her belief was erroneous.  (Doc. 79-1, pg. 70.)

Rodriguez continued to work at Target through April 28, 2011.  (DSOF 36; PSOF 36.)   Between April 28, 2011 and June 17, 2011, Rodriguez was permitted to take accrued vacation time, which extended her right to participate in Target's benefit plans through the end of June.  (DSOF 38; PSOF 38.)  After Rodriguez announced her decision

---

[10] Rodriguez's claim that Ms. Palmour showed her a corrective action which threatened termination and Rodriguez's ineligibility for transfer or promotion (Doc. 90, pgs. 8-9) is not supported by the record.  The citations to the record include cites to Rodriguez's deposition, none of which include testimony that Rodriguez believed she would be fired, as well as citation to a "confidential corrective action report" which is unsigned and undated.  (Doc. 92, Ex. 49.)  In addition, Rodriguez  testified that she never looked at the form in question.  (Doc. 92, Ex. 35, pg. 19.)

- 10 -

to retire, and before her last credited day of employment in June, 2011, Target hosted a joint going-away party for Rodriguez and Ms. Palmour. (DSOF 39; PSOF 39.)

On May 28, 2011, Rodriguez submitted a Voluntary Termination Request form indicating that a factor contributing to her retirement was that "expectation [sic] for TL are too high." (DSOF 42; PSOF 42.) Rodriguez also stated on the form "I feel that Target is moving in a different direction in terms of the increasing expectation of team leaders. Target is a great company that allowed me to grow as both a person and as a leader, however at this time, after 25 years with the company, it is time to take what I have learned and take on a new challenge in my life. I would like to thank Target for the many opportunities that it has given me and for the great relationships that I have made along the way."[11] (DSOF 43; PSOF 43.) Rodriguez testified that Mr. Lopez helped her write the comments on the form. (Doc. 92, Ex. 35, pg. 5.)

Rodriguez commented to her Target co-workers that if she retired, she might want to come back part-time just to have another job and because she would miss them. It is unclear from the record when Rodriguez made these statements. (DSOF 46; PSOF 46.)

On December 13, 2011, Rodriguez filed an EEOC charge alleging that Target had discriminated against her on the basis of age and had retaliated against her. (Doc. 92, Ex. 53.) The EEOC charge alleges that Rodriguez was "terminated/constructively discharged from her employment on or about June 17, 2011 (at age 58) after approximately 25 years of employment with Target." (*Id.*) The EEOC charge further alleges that in her last year of employment, Rodriguez received write-ups when younger employees did not, Rodriguez was encouraged by Mr. Lopez and Ms. Palmour to retire, Mr. Lopez told Rodriguez that if she was terminated she would lose her retirement benefits, and Rodriguez believed that Store Team Leader Karen Jordan was trying to give Rodriguez a

---

[11] Rodriguez made similar statements on her unemployment benefits claim form. (Doc. 79, Ex. C.) The Court overrules Rodriguez's objection that the form is inadmissible because it has not been authenticated and constituted inadmissible hearsay. R testified during her deposition that she completed the form; the statements within the form are party admissions.

- 11 -

corrective action which would "make it easy" to fire Rodriguez.[12] (*Id.*)

On November 27, 2012, Rodriguez filed a Complaint in this Court against Target alleging claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") on behalf of herself and members of a prospective class. (Doc. 1.)

## ANALYSIS

Target contends that it is entitled to summary judgment on Rodriguez's claims of age discrimination and retaliation because Rodriguez did not suffer an adverse employment action. In addition, Target argues that Rodriguez's retaliation claim also fails because Rodriguez did not engage in protected activity. Because the Court concludes that Rodriguez did not suffer an adverse employment action and therefore Target is entitled to summary judgment on Rodriguez's age discrimination and retaliation claims, the Court does not reach Target's claim that Rodriguez did not engage in protected activity.

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual [who is at least 40 years of age] ... because of such individual's age." *Id.* at §§ 623(a), 631(a). To establish a violation of ADEA under the disparate treatment theory of liability, Rodriguez must first establish a prima facie case of discrimination. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280-81 (9th Cir. 2000). To establish a prima facie case, Rodriguez must demonstrate that she was a member of a protected class (at least age 40), performed her job satisfactorily, was discharged and was replaced by a substantially younger employee with equal or inferior qualifications. *Id.* at 1281. To establish a claim of retaliation, Rodriguez must prove that she engaged in a protected activity, suffered an adverse employment action, and there was a causal link between the protected activity and the adverse employment action. *Poland*, 494 F.3d at 1180. Thus,

---

[12] Although Rodriguez testified that she believed Ms. Jordan may have discriminated against her, she could not explain how, and she did not testify that any conduct by Ms. Jordan led to her retirement decision. (Doc. 92, Ex. 35, pg. 4.)

both of Rodriguez's claims require proof of an adverse employment action as an element of her prima facie case.[13]

Rodriguez alleges that she suffered an adverse employment action when she was constructively discharged from Target on June 17, 2011.[14] The constructive discharge doctrine sets a "high bar [because] federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Poland*, 494 F.3d at 1184. An employer is liable for constructive discharge when it imposes intolerable working conditions that foreseeably would compel a reasonable employee to quit. *See Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (citing EEOC Policy Guide, 405:6693). In evaluating whether working conditions are intolerable, the Court applies an objective standard. *See Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411-1412 (9th Cir.

---

[13] For the reasons stated in footnote 5, supra, the Court rejects Rodriguez's claim that, pursuant to *Theissen*, 267 F.3d at 1108-09, she is entitled to a presumption that all employment decisions regarding Rodriguez were made pursuant to a pattern or practice of age discrimination.

[14] In her response to Target's Motion for Summary Judgment, Rodriguez argues that she also suffered adverse employment actions when she was unfairly disciplined and received an unfavorable review affecting her raise. However, Rodriguez's EEOC charge alleged only that Rodriguez was constructively discharged; it did not include any allegation that Rodriguez had suffered any other adverse employment action. (Doc. 92, Ex. 53, pgs. 1-3.) In addition, Rodriguez's Complaint alleges that she was constructively discharged. (Doc. 1, ¶ 4.03.) Accordingly, Rodriguez has not exhausted her remedies with respect to her unwarranted discipline/unfavorable review claims. *See Albano v. Schering-Plough Corp.*, 912 F.2d 384 (9th Cir. 1990) (although claims regarding incidents not asserted in an EEOC charge may be raised in federal court if they are reasonably related to the allegations of an EEOC charge, a constructive discharge claim is not reasonably related to a charge of discrimination in promotion that preceded the constructive discharge). Moreover, Rodriguez has not demonstrated a material issue of fact with respect to her claims that she was unfairly disciplined or that her unfavorable review affected her raise. Rodriguez conceded that she did not always complete her work on time and that her performance fell short of her supervisor's expectations. (DSOF 18; PSOF 18.) Rodriguez described her 2010 review score as "positive." (Doc. 79-1, pg. 8.) In addition, Rodriguez received a pay raise following her 2010 evaluation and there is no evidence in the record demonstrating that the raise would have been higher had Rodriguez received a higher score. (DSOF 7; PSOF 7.) In response to Target's statement that Rodriguez received a pay raise in 2010, Rodriguez argues that the review score impacts how much of a pay raise the employee can receive, but she does not present any evidence to support that assertion. Instead, Rodriguez cites to depositions from other age discrimination cases against Target in which other employees testified that raises were awarded following the annual reviews. (PSOF 7.) Of the three depositions cited, one is from 2006 and one is from 2008.

- 13 -

1996).  The "intolerable" working conditions required for proof of constructive discharge must be worse than the severe or pervasive harassment necessary to support a hostile work environment claim.  *Manatt v. Bank of America, NA*, 339 F.3d 792, 804 (9th Cir. 2003.)  In general, a single isolated incident is insufficient as a matter of law to support a finding of constructive discharge. *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990).  Thus, a plaintiff alleging constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment.  *Id.*  The Court may consider additional factors including whether the employee remained in the job for some time following the initiation of the allegedly intolerable conditions and the employee's proffered reasons for terminating his/her employment.  *See Poland*, 494 F.3d at 1185.  An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.  *Id.* at 1184-85 (citing and quoting *Tidwell v. Meyer's Bakeries, Inc*., 93 F.3d 490, 494 (8th Cir. 1996)).

Rodriguez alleges that she was constructively discharged because: she was questioned by Mr. Lopez and Ms. Palmour about when she was going to retire; her review score dropped; she was identified as needing attention; she was "bombarded" with coachings; and she was threatened with a counseling.  (Doc. 88.)  Rodriguez's version of events is generally not supported by the record.  Rodriguez cannot recall whether Mr. Lopez teased her about retiring before or after she announced her plans to retire.  In addition, there is no evidence that Ms. Palmour questioned Rodriguez about retirement: Rodriguez testified that Rodriguez brought up the subject of retirement in casual conversation with Ms. Palmour one night when they were closing the store.  Rodriguez's claim that her 2010 review score "dropped" is an exaggeration.  Although the score of 70 was lower than the 80 that Rodriguez had received in 2009, it was close to the 72 that Rodriguez received in 2008.  Under the review rubric employed by Target from 2005-2010, Rodriguez was in the "effective" category (70-79) in 2006, 2008 and 2010.  In addition, under the scoring system used before 2005, Rodriguez was in the comparable "low satisfactory plus" and "high satisfactory plus" categories in 1986, 1987, 1988, 1989

and 1991.  There is no evidence that Rodriguez was aware of the "needing attention" designation, thus the designation is not relevant to whether a reasonable person in Rodriguez's shoes would have quit.  *See Brooks*, 229 F.3d at 930; *Schnidrig*, 80 F.3d at 1411-12.  Rodriguez also testified that being identified as "needing attention" did not necessarily mean that the employee would receive corrective action.  Finally, it is inaccurate to describe Rodriguez's coachings in 2011 as a "bombardment" given that Rodriguez admitted she was not completing tasks on time and was not meeting her supervisor's expectations.

Thus, even construing the evidence in the light most favorable to Rodriguez, the only material facts presented by Rodriguez in support of her constructive discharge claim are that: (1) she received a series of eight step-one coachings in 2 months; (2) she received an evaluation score in April, 2011 that was slightly lower than previous scores; and (3) she was called into a meeting with Ms. Palmour during which Ms. Palmour stated that Rodriguez was going to receive a step-two corrective action, *ie*. a counseling.  As a matter of law, this chain of events does not rise to the level of "intolerable" discriminatory acts which would compel any reasonable person to quit.  *See Poland*, 494 F.3d 1184 (finding no constructive discharge where employee is reassigned to another state, resulting in separation from family, and demoted to a non-supervisory position); *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005) (no constructive discharge where employee was sexually harassed, received adverse performance memoranda, was subject to snide remarks, and warned that his performance would be reevaluated after a thirty-day period);  *Brooks*, 229 F.3d at 922  (no constructive discharge where male employees ostracized plaintiff, her supervisors mistreated her, and she had trouble getting her desired work shift and preferred vacation dates while other employees with less seniority got their preferences); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465-66 (9th Cir. 1994) (constructive discharge does not occur when an employee resigns following sexual harassment by a supervisor coupled with low performance marks).

Other facts further support the conclusion that Rodriguez was not constructively discharged. Rodriguez continued to work for Target for two weeks after her resignation, she told co-workers she was considering returning for part-time work after she retired, and she attended a retirement party in her honor at Target while she was exhausting her vacation time. *See Poland*, 494 F.3d at 1185 (court may consider whether employee remained in the job for some time following the initiation of the allegedly intolerable conditions). Rodriguez did not mention any concerns about age discrimination or the alleged intolerable working conditions in her voluntary termination request form, instead stating that her retirement was due to "increased expectation of team leaders" and her desire to "take on a new challenge."[15] *See id.* (court may consider the employee's proffered reasons for terminating his/her employment in evaluating constructive discharge claim). Rodriguez knew at the time she gave her notice that Ms. Palmour had accepted a position at another Target and would no longer be working at store #1316. An objectively reasonable employee would not feel compelled to quit when she knew the person creating the allegedly intolerable conditions was leaving. *See Steiner*, 25 F.3d 1465 (court may consider harasser's termination in evaluating whether working conditions were intolerable at the time of resignation); *Montero v. AGCO Corp.*, 192 F.3d 856 (9th Cir. 1999) (same). Finally, when confronted with a step-2 corrective action from Ms. Palmour, Rodriguez jumped to unsupported, subjective conclusions that she was going to be terminated and would lose her retirement benefits, despite her awareness of Target's three-step discipline policy. *See Huskey v. City of San Jose*, 204 F.3d 893, 902 (9th Cir. 2000) (subjective fear of future discipline is not enough to support a finding of constructive discharge). Rodriguez did not challenge the step-2 corrective action or give Target an opportunity to resolve issues between Rodriguez and Ms. Palmour. *Poland*, 494 F.3d at 1184-85 (citing Eighth Circuit rule that an employee who does not give employer a chance to resolve the problem cannot claim constructive discharge).

---

[15] The Court notes that in February 2010, well before Ms. Palmour supervised Rodriguez, Rodriguez complained that her employment at Target was overwhelming her. (Doc. 89, Ex. 44.)

No reasonable juror could consider the facts presented by Rodriguez and conclude that Rodriguez was "forced out" of her position because of her age. Instead, the material facts presented to the Court compel the conclusion that Rodriguez retired because of her subjective dislike of changing expectations at Target and her own erroneous beliefs about a loss of benefits in the event that she was terminated. Rodriguez's actions were not those of an objectively reasonable employee compelled to quit because of intolerable conditions.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT Defendant's Motion for Summary Judgment filed on September 20, 2013 (Doc. 78) is GRANTED.

IT IS FURTHER ORDERED THAT Rodriguez's Motion to Conditionally Certify Class (Doc. 41) is DENIED AS MOOT.

IT IS FURTHER ORDERED THAT the Clerk of the Court shall enter judgment in favor of Defendant and close the file in this matter.

Dated this 19th day of December, 2013.

Jennifer G. Zipps
United States District Judge